ALLEN LICHTENSTEIN, NV BAR 03992
MARGARET A. MCLETCHIE, NV BAR 10931
LEE B. ROWLAND, NV BAR 10209
JUDY C. COX, NV BAR 11093
AMERICAN CIVIL LIBERTIES UNION OF NEVADA
732 S. 6th St. Suite 200A
Las Vegas, NV 89101
Telephone 702-366-1536
Facsimile 702-366-1331

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| DOES 1 – 4,<br><br>      Plaintiffs,<br><br>  vs.<br><br>United States Attorneys Office, District of Nevada,<br><br><br>      Defendant. | Case No. 2:09-cv-01083 KJD-PAL<br><br>MOTION TO UNSEAL ALL SEALED DOCUMENTS AND, IN THE ALTERNATIVE, FOR ACCESS TO SEALED *EX PARTE* DOCUMENTS |

## MOTION TO UNSEAL ALL SEALED DOCUMENTS AND, IN THE ALTERNATIVE, FOR ACCESS TO SEALED *EX PARTE* DOCUMENTS

Come now Plaintiffs, by and through their attorneys of record, and file this Motion to Unseal All Documents, or in the Alternative for Access to All Sealed *Ex Parte* Documents filed by Defendant, the U.S. government. This motion is based on the attached Memorandum of Points and Authorities, all pleadings on file in this case, and any such argument as may be granted by the Court.

### I.  INTRODUCTION

The DOES publicly commented on a newspaper article about a high profile tax case. In response, the government – *the very same prosecutor criticized by the DOES and other*

1

*commenters* – then issued subpoenas designed to reveal the DOES' identities, along with all those of all other commenters. Ostensibly, the subpoenas were also designed to seek prosecution of the commenters. To prevent this from happening, the DOES initiated this legal action. The DOES also sought recusal of the assigned judge due to concerns about the public appearance of impartiality. Rather than litigate this case fairly and in the light of day, the government is acting in total secret in this case, like the Star Chamber of 1600's England, by attempting to keep all its legal filings and communications with the court out of view, even from opposing counsel.

Fundamental to both American democracy and fair play are the requirements that the public be able to observe and have access to court proceedings, and that the opposing party have equal access to the court and the ability to respond to legal filings.[1] The government has filed numerous sealed and *ex parte* documents despite the fact that there is no rule or court order allowing them to do so. Meanwhile, the DOES, who acted as quickly as they could to protect their rights, have not received any rulings from the court and are hamstrung from protecting themselves. And the government, while it communicates in secret with the court, is taking the position that this case should just be summarily dismissed as moot. In other words, the government is asserting that the DOES should have no right or ability to challenge the subpoenas it sought, and that the pubic has no business monitoring challenges to actions by its own government. This is true even though these filings likely deal with a spate of legal issues – for instance, mootness, standing, and recusal – that in **no way** threaten grand jury secrecy,

---

[1] *See e.g., Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598-99 (1978) (discussing public's right to copy and inspect judicial proceedings and records in order to keep a "watchful eye" on public agencies); *Chernekoff v. United States*, 219 F.2d 721, 723 (9th Cir. 1955) (essential to a fair hearing is the ability to have an opportunity to know of adverse evidence and to be heard concerning its truth, relevancy and significance).

and that fall squarely into the longstanding and fundamental truism that legal documents are public.

Not only should the DOES be given a fair and open avenue to seek recourse from the courts to protect the fundamental First Amendment rights at stake, the public should be able to know how its government is conducting itself in this matter. This case raises a number of important questions about government power and legal process: (1) whether the United States Attorney's Office abused its grand jury subpoena power by issuing subpoenas to obtain information protected by the First Amendment; (2) the propriety of a prosecutor subpoenaing identifying information about his critics and impliedly threatening prosecution of his critics; (3) the potential impact of such action on a current trial; and (4) when a judge should be recused. This case must be litigated fairly and in the light of day, and the public interest in open court proceedings, present in all court proceedings, is especially heightened given the important questions raised. The significant press coverage and public comment that the subpoenas have sparked highlights the public's keen interest in this matter as well as the underlying tax case criticized by the commenters, which arguably could be impacted if the jurors learn that the government has threatened prosecution of people who do not agree with its position in the case. In sum, the stakes are very high.

Despite the high stakes, by filing sealed and *ex parte* documents, including at least one motion to dismiss the entire case, the U.S. Attorney's Office is laboring under the erroneous position that it should be able to operate in secret, even in a civil case where the allegations are that it has improperly used its "secret" grand jury powers. If the government is allowed to exclude not only the public but the very people who are challenging them from obtaining equal access to the court and court filings, then the U.S. Attorney's Office would be able to operate

3

entirely unchallenged. This result would be repugnant to our entire form of government. Amazingly, the government has taken the liberty of repeatedly filing sealed and *ex parte* documents without even first meeting the procedural or legal burdens necessary to take such drastic measures.

There is absolutely no authority that gives the U.S. Attorney's Office the right to proceed under a total cloak of secrecy in this matter. It runs afoul of two basic principles of our court system: the adversarial process and open access to court proceedings. It violates the DOES' due process rights and their ability to protect their fundamental First Amendment rights. Grand jury secrecy rules are inapplicable to this civil action,[2] and the government has failed to, and cannot, meet the legal and procedural burdens necessary to file sealed and *ex parte* motions in a civil case. For these reasons, all documents should be unsealed and the DOES, as well as the public, should have access to them.

Accordingly, as detailed below, DOES respectfully request that all documents filed under seal in this action be unsealed. To date, those documents are docket numbers 5, 7, 8, 15, and 16. While DOES contend that all documents should be made public, at the very least, DOES should have access to a sealed copy of the *ex parte* motion to dismiss (Doc. 7) as well as all other *ex parte* filings (Docs. 5, 8, 15, 16). Thus, if this Court denies the motion to unseal, DOES respectfully request that they be provided access to the secret filings.

## II.     PROCEDURAL HISTORY

Assistant United States Attorney J. Gregory Damm (AUSA Damm) issued a grand jury subpoena ("First Subpoena") on June 2, 2009 seeking information about each and every public

---

[2] Rules concerning grand jury secrecy are codified in the Federal Rules of Criminal Procedure, specifically in rule 6(e). Conversely, this case is a civil action challenging the constitutionality of subpoenas; therefore, this case is governed by the Federal Rules of Civil Procedure, in which there are no secrecy provisions for grand jury matters.

comment about an article posted on the Las Vegas Review-Journal's website about a federal tax trial in which he is serving as a prosecutor, *United States of America v. Kahre et. al.* (2:05-cr-121-DAE-RJJ) ("Kahre Case").[3] The article provoked much debate, with many commenters noting agreement with Mr. Kahre's position, great dislike of AUSA Damm, and more generally sharing their political opinions concerning the I.R.S. and the United States monetary system. A few commenters noted agreement with the government. While many expressed their opinions in strong terms, not a single comment posted was criminal.[4]

Upon learning of the First Subpoena, DOES 1-3 filed a Motion to Intervene, Motion to Quash, and Motion for Protective Order (Docs. 2, 3, 4) on June 16, 2009 seeking to protect their privacy and First Amendment rights. Subsequently, DOES learned that the First Subpoena was withdrawn and that a Second Subpoena was issued on June 16, 2009, seeking only identifying information concerning two commenters to the June 17, 2009 Review-Journal article (the "Second Subpoena"). The Review-Journal supposedly complied with the Second Subpoena on June 18, 2009. (Doc. 14 at 4:3-4.) On June 22, 2009, DOES 1-3, along with DOE 4, who joined in challenging the subpoenas, filed an Amended Motion to Intervene, Motion to Quash, and Motion for Protective Order (Docs. 9, 17, 18) addressing the Second Subpoena and further clarifying that the relief requested with respect to the First Subpoena was not moot just because the First Subpoena was withdrawn, and that even if both subpoenas had been complied with, their attempts to quash the subpoenas and obtain a protective order were not mooted.

---

[3] Mr. Kahre, the lead defendant, paid people who worked for him in gold and silver coins, and believes that the I.R.S. should assess taxes based on the face value of the coins rather than their market value. Joan Whitely, *Employer's gold, silver payroll standard may bring hard time*, Las Vegas Review-Journal, May 26, 2009, http://www.lvrj.com/news/46074037.html attached as Exhibit 4 to Doc. # 9.

[4] See DOES' Amended Motion to Quash (Doc. 9 at 13: 25 – 22:2.)

Instead of filing an opposition to the Motion to Quash, the government filed a motion to dismiss DOES' motion and to dismiss the case in its entirety. Because the government's original Motion to Dismiss was filed *ex parte*, the following is the only information that DOES received concerning the filing:

> COMES NOW the United States Attorney's Office for the District of Nevada (the "United States"), and files this Motion (1) to Dismiss Plaintiffs' Motion to Quash, for Protective Order, and to Intervene, dated June 16, 2009 (collectively, the "Omnibus Motion"), and (2) to Dismiss Case No. 2:09-cv-1083-KJD, for the reasons set forth in this motion, and in the sealed, *ex parte* memorandum, filed contemporaneously herewith. It is hereby certified that the above-captioned response is filed in a timely manner.

(Doc. 7.)

Neither the original motion nor the amended motion has been ruled on, as of this filing. This matter was assigned to Judge Dawson on June 17, 2009. On June 22, 2009, DOES filed a motion to recuse Judge Dawson (Doc. 10). That motion has not been ruled on as, of this filing.

On June 22, 2009, the government filed an Amended Motion to Dismiss and an Opposition to Plaintiffs' Motion to Recuse (Doc. 14). While the Amended Motion to Dismiss was provided to counsel for DOES, the initial motion (Doc. 7) remains *ex parte*.

The government has filed at least four other documents under seal and *ex parte*. To date those documents are docket numbers 5, 8, 15, and 16. DOES have no access to these documents and have no knowledge of when they were filed or what information is contained in them. DOES are unable to respond to these documents or rebut any arguments contained therein. DOES were given a copy of the Amended Motion to Dismiss (Doc. 14) and a copy of the Opposition to the Motion to Recuse Judge Dawson, both of which were designated as "sealed" but there is no way to know if the Opposition to the Motion to Recuse was filed as

documents 5, 8, 15, or 16. However, even if it were, there are at least three sealed *ex parte* documents that still remain a complete mystery.

## I. ARGUMENT

### A. **Given the Issues Raised By this Case, Operating in Secrecy By Filing Multiple Sealed *Ex Parte* Documents is Inappropriate.**

DOES initiated this civil case in order to challenge what they consider to be invalid subpoenas that violate the First Amendment and constitute prosecutorial abuse of the grand jury process.[5] AUSA Damm issued his first subpoena seeking personal information from the Las Vegas Review-Journal ("Review-Journal") about every person who commented on an article about an ongoing federal tax trial in which he is serving as a prosecutor.

Fearing governmental retribution for their comments, and believing that the subpoena was merely a "fishing expedition"[6] by AUSA Damm to chill future speech and send a message to other tax protesters, DOES sought legal help. They filed a motion to intervene and quash the subpoena in order to protect their First Amendment right to free speech. The Second Subpoena was issued on June 16, 2009, but the narrower scope of the subpoena did not alleviate the fundamental constitutional problems underlying the impetus and purpose behind it. DOES filed Amended Motions to Intervene, Quash, and for a Protective Order and subsequently filed a Motion to Recuse of Judge Dawson ("Recusal Motion") based on his connection to the *Kahre* case and his past negative experiences with tax protesters. In response to DOES' motions, the

---

[5] As explained in their Amended Motion to Quash (Doc. 9), DOES filed this action because they believe the issuance of a grand jury subpoena seeking the names of all commenters to the Review-Journal's article is unconstitutional and is meant to suppress opposition to their criminal prosecution in the *Kahre* case, and potentially chill jurors (Doc. 9 at 11:2-3, 25:21-27:10.)

[6] *U.S. v. R. Enterprises, Inc.*, 498 U.S. 292, 299 (1991) ("grand juries are not licensed to engage in arbitrary fishing expeditions").

government has filed several sealed and *ex parte* documents to which only they and the court have access.

Given that questions about governmental power lie at the heart of this matter, and given the significant public attention this matter has received, it is especially important that the public have confidence in the proceedings – confidence which can only be gained by public oversight. Grand jury secrecy rules are inapplicable to this civil action, and the government has failed to, and cannot, meet the legal and procedural burdens necessary to file sealed ex parte motions in a civil case. For these reasons, all documents should be unsealed and the DOES, as well as the public should have access to them.

B.  **Grand Jury Secrecy Rules are Inapplicable to This Collateral Civil Action.**

The government has not, and cannot, meet the burden of proof necessary to apply grand jury secrecy rules to any or all of its filed documents in this civil action. The general grand jury secrecy rules, applicable only in grand jury proceedings, **do not** extend to this collateral civil litigation concerning the constitutionality of the government's First and Second Subpoenas. Indeed, the rule regarding grand jury secrecy is limited by its own terms:

> A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government … shall not disclose ***matters occurring before a grand jury***… No obligation of secrecy may be imposed on any person except in accordance with this rule.

Fed. R. Crim. P. 6(e)(2) (emphasis added). Rule 6(e)(2) shields only those issues submitted to a grand jury and it only shields them for purposes such as: (1) to prevent the escape of prospective indictees; (2) to insure the grand jury of unfettered freedom in its deliberations; (3) to impede the subornation of perjury and tampering of witnesses by targets of the investigation; (4) to encourage forthrightness in witnesses without fear of retaliation; and (5) to act as a shield

for those who are exonerated by the grand jury. *Proctor & Gamble Co.,* 356 U.S. 677, 681 n. 6 (1958).

In other words, the secrecy rule is meant to protect the identities of witnesses or jurors, the substance of grand jury testimony, the strategy or direction of the investigation, and juror questions and deliberations. *See U.S. v. Thomas*, 545 F.Supp.2d 1018, 1024-25 (N.D. Cal. 2008); *Fund for Constitutional Gov't v. Nat'l Archives*, 656 F.2d 856, 869 (D.C. Cir. 1981). Thus, while grand jury investigations themselves are generally secret:

> Rule 6(e) does not draw a veil of secrecy over all matters occurring in the world that happened to be investigated by a grand jury... The touchstone is whether disclosure would tend to reveal some **secret aspect** of the grand jury's investigation of such matters as the identities of witness or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberation or questions of jurors and the like.

*Canning v. US Dep't of Justice*, 919 F. Supp. 451, 455 (D.C. Cir. 1994)(emphasis added).

Therefore, unless the government's sealed *ex parte* documents contain the identities of witness or jurors, the substance of testimony, or the deliberation or questions of jurors – which are highly unlikely to be relevant – sealed *ex parte* documents are not permissible. The only possible excuse the government could use to justify its sealed *ex parte* filings is that it wants to protect the strategy and or direction of the government's investigation of DOES. However, such an excuse would be mere pretext. In a civil action challenging the constitutionality of the government's abuse of the grand jury process, it is hard to imagine why the government would need to include this information in a motion to dismiss DOES' constitutional challenge. The mere fact that a grand jury investigation is underway, for what purpose, and what information

the grand jury has collected is certainly no secret[7] and does not warrant sealed *ex parte* filings. Given the fact that the government issued subpoenas to get the identities of DOES and other commenters, it is hard to imagine what secret information it could possibly have. In any case, any actual "secret" information could be redacted.

DOES' civil challenge is based on the premise that the U.S. attorney's grand jury subpoena to the Review-Journal is unconstitutional because their comments were protected political speech, they committed no crime, and the purpose of the subpoenas is to punish their speech and suppress future criticism against the U.S. attorneys. The secrecy rule applies only to materials that will actually reveal some secret aspect of the inner workings of the grand jury. DOES are not seeking grand jury materials – they are seeking access, for themselves and for the general public, to sealed *ex parte* documents which the government has filed in *this* case – not the subpoena case against the Review-Journal.[8] The public knows a grand jury subpoena was issued, and the identities of witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, and juror questions and deliberations are all irrelevant to any argument the government could make to challenge DOES' standing to challenge the subpoenas,

---

[7] Thomas Mitchell, *Subpoena seeks names -- and lots more -- of Web posters*, Las Vegas Review-Journal, June 7, 2009, *available at* http://www.lvrj.com/opinion/47141327.html attached as Exhibit 2 to Doc. 9; Joan Whitely, *Review-Journal resists subpoena for names of readers who posted views*, Las Vegas Review-Journal, June 16, 2009, *available at* http://www.lvrj.com/news/48145032.html; *U.S. prosecutors narrow subpoena*, Las Vegas Review-Journal, June 17, 2009, *available at* http://www.lvrj.com/news/48240147.html; Joan Whitely, *TAX CASE: Prosecutors seek to stop ACLU probe*, Las Vegas Review-Journal, June 25, 2009, *available at* http://www.lvrj.com/news/49081181.html.

[8] The ACLU of Nevada is not representing the Las Vegas Review-Journal. It is representing DOES 1-4, who posted comments, and whose identities are being sought by the government. The subpoenas were issued to the Review-Journal and the second subpoena seeks "All information or records regarding the identification of the computers used to make the following posts and the individuals making the following posts to the article entitled "Employer's Gold, Silver Payroll Standard May Bring Hard Time," dated May 26.2009…" Second Subpoena attached as Exhibit 5 to Doc. 9.

or to DOES' motion to recuse Judge Dawson. Such information is also unnecessary to rebut DOES' constitutional arguments or their recusal motion against Judge Dawson, nor is it necessary or pertinent to the government's opposition to DOES' Motions to Quash, to Intervene, and for a Protective Order. Thus, any attempt by the government to use the secrecy rules as an excuse to file sealed *ex parte* documents is merely a pretext to gain an unfair advantage over DOES by pretending to need the protection of grand jury secrecy rules – rules which are inapplicable in this collateral civil action.

The actual arguments at hand – for example, what the scope of the First Amendment is under the facts – are not imaginably protected and must be made public. In sum, grand jury secrecy rules do not apply in this case, because this is a civil action challenging the constitutionality of the government's actions. This matter is a collateral matter to the government's separate grand jury proceeding,[9] and the government cannot, and has not even attempted to, set forth any proof that grand jury secrecy rules apply. This case is a civil matter, governed under the Federal Rules of Civil Procedure, and the government has not met the legal

---

[9] Even if the information sought were not collateral and did pertain directly to a grand jury proceeding, it would be proper to unseal it. "A party seeking grand jury materials must show: (1) the materials are needed to avoid a possible injustice in another judicial proceeding, (2) the need for disclosure is greater than the need for continued secrecy, and (3) the request is structured to cover only the material so needed." *In re Grand Jury*, 118 F. 3d 1433, 1437 (10th Cir. 1997) (subject of a criminal grand jury investigation sought disclosure of some grand jury materials in order to disqualify the judge who was presiding over both the criminal and civil prosecution by the government for the same offense. District court granted limited disclosure and 10th Circuit reversed because Defendant's request for grand jury material was "general and vague" and was more of a fishing expedition and did not outweigh the interest in continued secrecy). Indeed, courts are especially likely to unseal information that has already been made public. "Some courts hold that information concerning matters occurring before the grand jury that has already been made public may not be protected by Rule 6(e)." *Penguin Books USA Inc. v. Walsh*, 756 F.Supp. 770 (S.D.N.Y. 1991). Here, it would be absurd to hold that any information that has already been made public through the numerous articles covering the issues needs be kept secret.

or procedural burden necessary for filing sealed documents nor for filing *ex parte* documents and engaging in *ex parte* communications with the Court.

C. **All Documents Should be Unsealed Because The Government Has Failed To Meet The Burden Of Proof Necessary to File Sealed Documents.**

This case is a civil matter challenging the constitutionality of a subpoena: it is not a challenge to a grand jury proceeding, thus the grand jury secrecy rules are inapplicable. As explained below, the government has failed to satisfy the necessary legal and procedural burdens necessary for filing sealed documents in either a civil or grand jury matter.

1. The Government has Failed to Meet the Burden Necessary for Sealing Documents, and Justice Mandates that this Matter Be Litigated in the Light of Day.

The Supreme Court has recognized a common law right to inspect and copy public records and documents, including judicial records and documents. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598-99 (1978). "It is well-settled that there exists, in both criminal and civil cases, a common law public right of access to judicial proceedings and records."  *Goldstein v. Forbes*, 260 F.3d 183, 192 (3d Cir. 2001).  "In general, the common law right attaches to any document that is considered a 'judicial record,' which depends on whether the document has been filed with the court…." *United States v. Wecht*, 484 F.3d 194, 208 (3d Cir. 2007); *See also Republic of the Philippines v. Westinghouse Electric Corp*, 949 F.2d 653, 660 (3d Cir. 1991) (citing earlier cases and history of common law right).  The Supreme Court has also recognized a limited First Amendment right of access to judicial proceedings in criminal cases.  *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 575-78 (1980)("…in guaranteeing freedoms such as those of speech and press, the First Amendment can be read as protecting the right of everyone to attend trials so as to give meaning to those explicit guarantees.")

Accordingly, the federal courts of appeal, especially the Ninth Circuit, have recognized a "strong presumption" in favor of access to court documents, holding that only "compelling reasons" justify denying access to information in the case file. *Foltz v. State Farm Mut. Auto. Ins. Co.,* 331 F.3d 1122, 1135 (9th Cir. 2003)("In this circuit, we start with a strong presumption in favor of access to court records."); *United States v. Beckham*, 789 F.2d 401, 413 (6th Cir. 1986) (trial court "must set forth substantial reasons for denying" access to its records and mere articulation of rational justifications will not suffice.); *F.T.C. v. Standard Financial Management Corp.*, 830 F.2d 404, 408-10 (1st Cir. 1987) (the burden of overcoming the presumption of open judicial records is on the party seeking to maintain the court records in camera); *Leucadia v. Applied Extrusion Technologies*, 998 F.2d 157, 165 (3d Cir. 1993)("The burden is on the party who seeks to overcome the presumption of access to show that the interest in secrecy outweighs the presumption.")

In the Ninth Circuit, before a party can file sealed documents, it must petition the court for a protective order and must demonstrate "compelling reasons" to protect the document from public disclosure. *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006). Unless a court record is one "traditionally kept secret," there is a "strong presumption in favor of access". *Hagestad v. Tragesser,* 49 F.3d 1430, 1434 (9th Cir.1995)

The Ninth Circuit has identified two categories of documents that are "traditionally kept secret," and they are: (1) grand jury transcripts; and (2) warrant materials in the midst of a pre-indictment investigation. *Times Mirror Co. v. United States*, 873 F.2d 1210, 1219 (9th Cir. 1989). For all other documents, the party seeking to seal documents bears the burden of proving that compelling reasons – not simply "good cause" - exists to warrant sealing the documents. *Kamakana,* 447 F.3d at 1180, n.4 (a "good cause" showing will suffice to seal

documents produced in discovery, but "compelling reasons" are required to keep under seal dispositive motions and attachments. A "good cause" showing will not, without more, satisfy a "compelling reasons" test.)

Thus, a party, such as the government, who wants to seal motions or other filings bears the burden of overcoming this strong presumption of public access by meeting the "compelling reasons" standard. The party seeking closure must articulate "compelling reasons" supported by specific factual findings that outweigh the general history of access and the public interest in the judicial process. *Kamakana,* 447 F.3d at 1178-79.

In turn, the court must conscientiously balance the competing interests of the public and the party who seeks to keep certain judicial records secret. *Hagestad,* 49 F.3d at 1434. "The factors relevant to a determination of whether the strong presumption of access is overcome include the 'public interest in understanding the judicial process and whether disclosure of the material could result in improper use of the material for scandalous or libelous purposes or infringement upon trade secrets.'" *Hagestad*, 49 F.3d at 1134 (citing *EEOC v. Erection Co., Inc.*, 900 F.2d 168, 170 (9th Cir. 1990) After taking all relevant factors into consideration, the district court must base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture. *Id.*

After considering these interests, if the court decides to seal certain judicial records, it must base its decision on "a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Hagestad,* 49 F.3d at 1434 (vacating district court order sealing documents because the court failed to articulate any reason in support of its sealing order) (citing *Valley Broadcasting Co. v. U.S. Dist. Ct.,* 798 F.2d 1289, 1294 (9th Cir.1986)(reversing district court's denial of access to evidence in criminal case, finding news

organization had common law right of access and reasons asserted by the district court for closure were inadequate).

In general, "compelling reasons" exist to seal a document when that document could become a vehicle for improper purposes, such as to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets. *Kamakana*, 447 F.3d at 1179 ("The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records.")(citing to *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1136 (9th Cir. 2003)).

Furthermore, the court must make a finding of "compelling reasons" for *each and every* document filed under seal. *Foltz*, 331 F.3d at 1130. In *Foltz*, the district court issued a blanket protective order, forbidding both parties to disclose any information produced in discovery absent permission from the other party or from the district court. *Id*. at 1131. Although some documents met the "good cause" standard of Rule 26(c) because they contained trade secrets, financial information, and confidential information about third parties, the Ninth Circuit overruled the blanket protective order because the district court never required the filing party to show that specific discovery documents contained such information. The party seeking closure had "not asserted, much less shown, specific harm or prejudice that it expects will arise from disclosure of any particular documents…" and there was "no evidence that [the district court] ever made such a finding." *Id*. at 1131. Even when there is an umbrella protective order over a group of documents "the burden of justifying the confidentiality of each and every document sought to be covered by a protective order remains on the party seeking the protective order." *Cipollone v. Liggett Group, Inc.,* 785 F.2d 1108, 1122 (3d Cir. 1986)(stating

that a blanket protective order for discoverable documents under rule 26(c), still put the burden of showing "good cause" for each and every document on the moving party. Only the burden of raising the issue with respect to certain documents would shift to the other party.)

In the instant case, there is no evidence that the Government ever filed a motion for a protective order to seal its filing or put forth any effort to meet the burden of proof necessary to seal their documents. Furthermore, there is no compelling reason to believe, based on the public facts surrounding this case, that any documents filed by the government could be used for improper purposes.

In this civil action, the government is defending itself against a constitutional challenge to its grand jury subpoena and a recusal motion against Judge Dawson. It is impossible to image how an argument proving constitutionality of an AUSA's actions or impartiality of a federal judge could be used to "gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Kamakana*, 447 F.3d at 1179. Here, the interest in openness is especially heightened due to the subject matter of the case and the fact that the DOES have sought recusal. The public has a right to know how the government has been using its grand jury subpoena power and how the government is defending itself against a constitutional challenge based on its use of the secretive grand jury process. It also has a right to monitor recusal issues and the conduct of the court.

Merely arguing that this case is tangentially related to a grand jury matter is faulty logic. If there was an absolute rule mandating that anything concerning grand jury proceeding be cloaked in secrecy, it would be impossible to challenge the ability of prosecutors to utilize the powers of the grand jury, which would be a nonsensical result given that we live in a democracy, and given that case law makes clear that U.S. Attorneys do not have absolute

power with respect to grand jury subpoenas. Thankfully, the Ninth Circuit has designated only grand jury transcripts and pre-indictment warrant materials as documents which are "traditionally kept secret," and immune from the "strong presumption in favor of access". *See Times Mirror Co.*, 873 F.2d at 1219.

The government has not offered any "compelling reasons" proving that secrecy outweighs the public's or DOES' right of access or that disclosure of information in the sealed documents will cause them a clearly defined and serious injury. The government has not met its burden of showing that the information or arguments in the sealed documents is "the kind of information that courts will protect" and that "disclosure will work a clearly defined and serious injury to the party seeking closure." *Miller v. Indiana Hosp.*, 16 F.3d at 551. Indeed, it is unknown whether the government has even attempted to justify sealing its documents. If the government filed a motion or other evidence supporting its need to seal documents, such a filing was never served on DOES, and DOES have had no opportunity to rebut any arguments in favor of allowing the government to filed sealed documents.

Finally, any court ruling in favor of allowing a party to file a sealed document must be based on articulable facts, not hypothesis or conjecture. *See Hagestad v. Tragesser,* 49 F.3d at 1434. (vacating district court order sealing documents because the court failed to articulate any reason in support of its sealing order); *Valley Broadcasting Co. v. U.S. Dist. Ct.,* 798 F.2d 1289, 1294 (9th Cir.1986)(reversing district court's denial of access to evidence in criminal case, because reasons asserted by the district court for closure were inadequate).

If the party seeking to keep documents sealed cannot meet its burden of proof, then the court may unseal documents *sua sponte* or on motion of any party or third party. *Gambale v. Deutsche Bank AG,* 377 F.3d at 141. Here, the burden of proof was on the government to

prove "compelling reasons" for filing sealed documents, and the complete lack of evidence

showing that it even attempted to meet the legal and procedural requirements to filed sealed

documents proves that this Court should never have permitted the government to filed sealed

documents in the first place and should unseal them now.

2. <u>Sealed Documents Would Not Be Appropriate Even If Grand Jury Secrecy Rules Applied.</u>

Not only can the government not prove that "compelling reasons" exist to seal any and

all document, it cannot even prove that closure would be appropriate if the grand jury secrecy

rules applied. Even if the government were to argue that the grand jury secrecy rules somehow

apply to this collateral civil matter, and that including grand jury information was necessary to

defend itself against this civil challenge, it would still bear the burden of proving that secrecy

was warranted, and such argument would be in vain because the grand jury subpoena, its

purpose, and its targets are already public knowledge.

Federal rule of Criminal Procedure 6(e)(6) provides:

> Records, orders, and subpoenas relating to grand-jury proceedings must be kept under seal to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury.

In keeping with the public's common law and First Amendment right to access to court records,

rule 6(e)(6) is severely limited both in scope and time. It is limited to "records, orders, and

subpoenas" related to grand jury proceedings, and it applies only for "as long as necessary" to

keep those grand jury matters secret.

As noted above, this civil case and the grand jury subpoena are already in public eye and

so the need to maintain secrecy is no longer a valid excuse. Case law explicitly recognizes that

even grand jury proceedings themselves can be unsealed when the information is no longer

secret.  *See, e.g., In re Federal Grand Jury Proceedings 03-01*, 337 F. Supp. 2d 1218, 1220 (D. Or. 2004) (Finding the government's assertion of grand jury secrecy under Rule 6(e)(6) moot because much of the proceeding was already is in the public record, such as the subject's identity, the charges against him, the affidavits in support of the search warrant applications describing the nature and manner of the FBI's surveillance, and some of the court's orders. Information not already public could still be protected from disclosure.); *Penguin Books USA Inc. v. Walsh*, 756 F.Supp. 770 (S.D.N.Y. 1991)("Some courts hold that information concerning matters occurring before the grand jury that has already been made public may not be protected by Rule 6(e)").

Here, it would be absurd to hold that any information that has already been made public through the numerous articles covering the issues needs be kept secret.  Thanks to the string of Review-Journal articles, the public knows about both the First and Second Subpoena, what information was sought and why, and what crimes the government believes were committed by the DOES.  In fact, the only thing the public does not know is the identities of the DOES.

Furthermore, the basis for DOES' challenge is legal, not factual.  There are no disputed facts – DOES made certain anonymous comments which fall under the First Amendment protections for political speech and the government issued a grand jury subpoena to the newspaper seeking their identity in order to investigate the possibility of criminal charges against them.  DOES challenge to the subpoena is based on the legal argument that their comments were protected speech and the subpoenas are unconstitutional.  Thus, there is no need for the government to include any "matter occurring before the grand jury."  Even if this Court believed that grand jury secrecy rules were somehow applicable to this civil action, the government could not apply them in this particular case because the issue of secrecy is now

moot and because there is no need to divulge any secret matter in order to defend against a constitutional challenge or a recusal motion.

3. <u>All Documents Must Be Unsealed.</u>

As proven above, the grand jury secrecy rules are inapplicable, and the government cannot meet its burden of proof to show that "compelling reasons" exist that would permit this Court to issue a protective order allowing the government to file at least five documents under seal, with several of those being ex parte filings. There is no evidence that the government even filed a motion for a protective order to allow them to file sealed documents. Although it is possible to file an *ex parte* motion for a protective order, an *ex parte* motion would also by highly inappropriate, as discussed below, because it would not provide DOES the opportunity to rebut the government's assertions of secrecy.

The burden to justify sealing a document is on the party seeking its sealing. *Kamakana,* 447 F.3d at 1178-79. If the party seeking to keep documents sealed cannot meet its burden of proof, then the court may unseal documents *sua sponte* or on motion of any party or third party. *Gambale v. Deutsche Bank AG,* 377 F.3d at 141. DOES respectfully request that this Court unseal all documents filed by the government.

**D. *Ex parte* Filings are Extremely Inappropriate and The Government Cannot Meet The Necessary Legal Standard For Filing *Ex Parte* Documents.**

Even more egregious than filing sealed documents to which the public has no access, is filing *ex parte* documents, to which the *other party* has no access. By filing the documents both *ex parte* and under seal, the government is ensuring that it can operate under total secrecy. To date, the government has filed at least five *ex parte* documents (Docs. 5, 7, 8, 15, 16). *Ex parte* motions are extremely disfavored, and all evidence and argument proves that the

government's documents should be unsealed; however, if this Court declines to unseal them, DOES should at least be provided a copy, in order to address the contents therein.

Judges are usually extremely reluctant to act *ex parte* in civil actions, because the nonmoving party does not have the opportunity to be heard orally or in writing, and there is always a risk that the filing party may not be presenting all the facts the court needs to know before making a ruling. *See e.g., In re Intermagnetics America, Inc*. 101 B.R. 191, 192–193 (C.D. CA 1989).   For obvious reasons of adversarial fairness, *ex parte* communications between judge and litigant are strongly disfavored. They are tolerated of necessity, however, where related to non-merits issues, for administrative matters, and in emergency circumstances. *In re School Asbestos Litigation*, 977 F.2d 764, 789 (3d Cir. 1992)(citing to *United States v. Thompson,* 827 F.2d 1254, 1258-59 (9th Cir.1987)).   As with sealed documents, the burden is on the party wishing to file *ex parte* motions and documents – in this case, the government – to prove that such an extremely disfavored action is absolutely necessary.

    1.  <u>This Case Involves A Civil Constitutional Challenge To The Government's Issuance of a Grand Jury Subpoena; therefore, the Federal Rules of Civil Procedure Apply to All Filings.</u>

Non-grand jury proceedings, such as the present action are governed by the Federal Rules of Civil Procedure and the Local Rules of Civil Procedure.  This case is a civil action to quash an already-publicized grand jury subpoena.  The government has filed an *ex parte* motion to dismiss DOES' civil suit (Doc. 7, as amended Doc. 14) as well as four other sealed *ex parte* documents, most likely motions or oppositions to motions (Docs. 5, 8, 15, 16). The local rules of Civil Practice clearly provide that all motions, unless made during a hearing or trial, shall be in writing, supported by a memorandum of points and authorities, and served on all other parties. Local Rule 7-2(a).

In general, *ex parte* orders are proper only in limited situations, such as: (1) ministerial matters affecting only one side and as to which the court does not typically need an adversary presentation; (2) scheduling matters, such as motions to shorten time for hearing or to regulate the order of discovery procedures; and (3) emergencies in which the delay caused by notifying the opposing party of the motion, or action the opposing party may take after learning of the motion, may itself defeat the purpose of the motion. *See e.g., In re Intermagnetics America*, Inc. 101 B.R. 191 (C.D. Cal., 1989)(citing cases and discussing use and purpose of various *ex parte* motions).

Non-grand jury civil proceedings, such as the present civil action, are also governed by Local Rule of Civil Procedure 7-5 which states that "all *ex parte* motions, applications or requests shall contain a statement showing good cause why the matter was submitted to the court without notice to all." DOES have no way of knowing if the government filed such a statement, but if they did, it is highly doubtful that they actually met their burden of showing good cause.

This case involves a constitutional challenge to grand jury subpoena. There can be no emergency in which the delay caused by notifying the opposing party of the motion would defeat the purpose of the motion – the Constitutionality of an the government's action is not likely to change over night. Furthermore, it is highly unlikely that any action taken by DOES, after learning of the motion, would defeat the purpose of the motion – the government is defending itself against accusations of abuse of the grand jury process and issuing an unconstitutional subpoena. There is no action that DOES could take which would suddenly make government's past actions any more unconstitutional than they already are. Finally, the fact that this Court has yet to rule on any of the motions filed by any party further proves that

there is no emergency situation requiring *ex parte* action by the government or the court in this civil case.

   2.   The Government has Failed to Meet the Burden Necessary for Filing *Ex Parte* Documents.

The government cannot meet the high burden necessary of showing good cause to file *ex parte* documents in a civil case.  As the Ninth Circuit has explained, "situations where the court acts with the benefit of only one side's presentation are uneasy compromises with some overriding necessity, such as the need to act quickly or to keep *sensitive information* from the opposing party. Absent such compelling justification, *ex parte* proceedings are an anathema in our system of justice and, in the context of a criminal trial, may amount to a denial of due process."  *U.S. v. Thompson*, 827 F.2d 1254, 1258-1259 (9th Cir. 1987)(emphasis added)(finding that in camera *ex parte* examination of prosecutors motives for dismissing certain jurors was abuse of discretion).

 In *Thompson*, federal prosecutors argued that *ex parte* review was necessary because of the potential for release of confidential information that would prejudice the prosecution's ability to conduct its case. *Id*. at 1259.  The court acknowledged that such an excuse could justify *ex parte* proceedings in some situations, but cautioned that such an excuse could not be considered "in the abstract," and would only apply on a case-by-case basis. *Id*.   Upon examining the prosecutors' actual reasons, the court found them to be "mundane" and would in no way threaten the government's case strategy. *Id*.   *Thompson* lists several exceptions in which *ex parte* communication might be appropriate: (1) a district judge's *ex parte* review of the prosecution's evidence to determine if it is subject to the Brady rule[10]; (2) a district judge's

_____

[10]  *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

consideration on whether to reveal to the defense the identity of a government's informant; or (3) when there is a need to act quickly such as in an application for a temporary restraining order. *Thompson*, 827 F.2d at 1258-59, n.3. None of these exceptions are applicable to the instant case.

While DOES are not yet facing a criminal trial based on the information obtained through the grand jury subpoenas, they may someday, and this action is their first attempt to argue that the government's use of grand jury subpoenas is a violation of their First Amendment right to Freedom of Expression. Allowing the government the ability to file secret documents to defend itself against a constitutional challenge puts DOES at a severe disadvantage because it limits their ability to protect themselves against potential future criminal prosecution.

There is no possible set of facts that would allow the government to file sealed *ex parte* documents against DOES. The government does not meet any of the exceptions listed in *Thompson* nor does it need to rely on any facts from the grand jury proceedings or any strategy arguments to defend itself against a constitutional challenge. At the very minimum, DOES should have access to documents that the government has filed, in order to adequately address any arguments or facts stated in those documents. Finally, if the government's subpoena is constitutionally infirm, it is more efficient for the court to settle that issue now, rather than waste time indicting and prosecuting anyone based on secretive arguments that will not hold up to an adversarial challenge later in court.

The Ninth Circuit also favors allowing a party to have access to documents to avoid injustice.

> The fair hearing essential to meet minimum requirements of any
> accepted notion of due process includes the opportunity to know of

adverse evidence and to be heard concerning its truth, relevancy and significance. Otherwise such a hearing is in violation of the 'concept of ordered liberty.'

*Chernekoff v. United States*, 219 F.2d 721, 723 (9th Cir. 1955). *Chernekoff* is an excellent example of why the government should not be allowed to make *ex parte* arguments against a party. Mr. Chernekoff was a conscientious objector who refused induction into the military. *Id.* at 722. The military claimed to have proof of his lack of religious sincerity and held a hearing. *Id.* at 723. The government informed him of his right to be present and to introduce evidence in his own behalf, but did not inform him that he could have a summary of the negative information in the government's file, nor did it provide such information. *Id.* at 723. Thus, when Chernekoff tried introduced evidence at the hearing, "he was like a blind man striking at an invisible foe." *Id.* at 724. Had Chernekoff known that the government's evidence of religious insincerity was a single conviction for drunkenness and a later one for speeding, he could have easily disproved the government's case against him. *Id.* at 724.

DOES are in a similar position as Chernekoff. They cannot rebut the arguments contained in the government's sealed *ex parte* documents because they do not know what they are. To make matters worse, the government has not provided good cause to prove why it needs to keep *sensitive information* from DOES. Without such a showing, the government cannot file a series a *ex parte* motions. All *ex parte* motions should be made available to DOES.

3. Grand Jury Secrecy Rules are Inapplicable To This Civil Action and Cannot be Used To File *Ex Parte* Documents.

Again, this is a civil case challenging the constitutionality of a subpoena, not a grand jury case. As noted above, Rule 6(e) of the Federal Rules of Criminal Procedure cannot be used to draw a "veil of secrecy" over all matters tangentially related to a grand jury proceeding.

*Canning v. US Dep't of Justice*, 919 F.Supp. at 455 ("Rule 6(e) does not draw a veil of secrecy over all matters occurring in the world that happened to be investigated by a grand jury… The touchstone is whether disclosure would tend to reveal some secret aspect of the grand jury's investigation…").  The secrecy rule is actually rather limited, especially when it comes to documents filed in court.  Records, orders, and subpoenas relating to grand-jury proceedings must be kept under seal to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury. Fed. R. Crim. P. 6(e)(6).  As noted above, the grand jury subpoena, and the information it sought, has already been made public.

Furthermore, grand jury secrecy rules would not permit the government in this case to file *ex parte* motions.  An attorney for the government may not disclose a "matter occurring before the grand jury;"[11] however this rule does not require or mandate that any and all information concerning a grand jury proceeding must be secret.  A district court may authorize disclosure - at a time, in a manner, and subject to any other conditions that it directs - of a grand-jury matter in connection with a judicial proceeding. Fed. R. Crim. P. 6(e)(3)(E)(i).  This allows this Court to order disclosure of all *ex parte* documents to DOES.  There is no reason for the government to be filing multiple *ex parte* documents in this case.

The Ninth Circuit applies the secrecy rule only to materials that will actually reveal some secret aspect of the inner workings of the grand jury and that "Rule 6(e) 'is intended only to protect against disclosure of what is said or takes place in the grand jury room ... it is not the purpose of the Rule to foreclose from all future revelation to proper authorities the same information or documents which were presented to the grand jury.'" *U.S. v. Dynavac, Inc*. 6 F.3d 1407, 1411 (9th Cir. 1993)(citing to *U.S. v. Interstate Dress Carriers, Inc*., 280 F.2d 52,

---

[11] Fed. R. Crim. P. 6(e)(2).

54 (2d Cir. 1960) (finding that disclosure of business records held by a grand jury which were independently generated and sought for legitimate purposes, would not "seriously compromise the secrecy of the grand jury's deliberations."))[12]

The government cannot simply rely of the fact that a subpoena is tangentially related to this case and use that to justify filing sealed *ex parte* documents. Even the government must comply with the law. "Rule 6(e) 'is intended only to protect against disclosure of what is said or takes place in the grand jury room... ." *U.S. v. Dynavac, Inc.* 6 F.3d at 1411. In a civil challenge against the constitutionality of the government's use and potential abuse of the grand jury process, there is no possible reason for the government's defense of its actions to remain secret.[13]

In the instant case, it is unlikely that there is any information that the grand jury has, and that could be necessary to the subject matter of the government's filings, that would

---

[12] Thus, if a document is sought for its own sake rather than to learn what took place before the grand jury, and if its disclosure will not compromise the integrity of the grand jury process, Rule 6(e) does not prohibit its disclosure. *Id.* at 1412. In fact, once those "matters occurring before the grand jury" are made public, or once they have lost their protected character, they are no longer protected by the secrecy requirement of rule 6(e). *See In re Federal Grand Jury Proceedings 03-01*, 337 F.Supp.2d 1218 (D. Or. 2004).

[13] Although not relevant to this civil matter, it is interesting to note that Courts have permitted *ex parte* motions as part of the balancing act required to properly protect grand jury secrecy, *In re Grand Jury*, 472 F.3d 990, 995 (8th Cir. 2005); however, modest breaches of grand jury secrecy (this is not what our case is about) may well be required when nondisclosure would defeat fundamental constitutional rights. *United States v. Dinsio*, 468 F.2d 1392, 1394 (9th Cir. 1973); *citing Bursey v. United States*, 466 F.2d 1059 (9th Cir. 1972). In fact, the Supreme Court has held that opposing counsel may have the ability to access grand jury witness testimony as long as there is a showing of need and the need for secrecy is minimal. *Dennis v. United States*, 384 U.S. 855, 869, 870, 872 (1966) ("These developments (making grand jury testimony available to defendants) are entirely consonant with the growing realization that disclosure, rather than suppression, of relevant materials ordinarily promotes the proper administration of criminal justice." [and] "is also reflected in the expanding body of materials, judicial and otherwise, favoring disclosure in criminal cases analogous to the civil practice.")

somehow jeopardize the government's not-so-secret grand jury proceedings against the anonymous commenters. The government's actions were either constitutional or not – and there is no matter before the grand jury which could possibly affect the Court's determination of that fact or that would need to be kept secretive from DOES. Any argument in favor of the constitutionality of the government's grand jury subpoena would rely on case law and statutes, not secret facts, and the government's original Motion to Dismiss (Doc. 7) would presumably be based on procedural arguments. There is no possible basis for keeping such information secret from either DOES or the public. Revealing, for example, the cases that the government relies to prove that its actions were constitutional on in no way jeopardizes any legitimate criminal investigation.[14]

Thus even if this Court were to believe that grand jury secrecy rules could theoretically apply to this case, they would still be inapplicable because of the nature of the legal arguments and the fact that the entire case has already been in the public eye for so long.

////

////

---

[14] Regardless, even if some secret aspect was absolutely necessary for Defendants' Motion to Dismiss (Doc. 7), or one of the other 4 *ex parte* documents (Docs. 5, 8, 15, 16), the secrecy of those matters could be maintained without requiring that all aspects of this collateral matter be conducted in secret between one judge and the U.S. Attorney's Office. For example, any secret information could be redacted. *See, e.g., In re Federal Grand Jury Proceedings 03-01*, 337 F. Supp. 2d 1218, 1220 (D. Or. 2004) (Finding the Government's assertion of grand jury secrecy under Rule 6(e)(6) moot because much of the proceeding was already is in the public record, such as the subject's identity, the charges against him, the affidavits in support of the search warrant applications describing the nature and manner of the FBI's surveillance, and some of the court's orders. Information not already public could still be protected from disclosure.) Thus, even if portions of the government's Motion information of commenters on the Review-Journal's website because it does not know to Dismiss truly were covered by grand jury secrecy or some other privilege, a proposition with DOES doubt, as noted, such information could be redacted from the rest of the pleading.

## IV. CONCLUSION

As noted above, the party wishing to seal all or part of the judicial record bears the burden of establishing "compelling reasons" why the material is "the kind of information that courts will protect" and that "disclosure will work a clearly defined and serious injury to the party seeking closure." The government has offered no such proof and given that this case is only tangentially related to the grand jury process, the government should be held to this high standard before assistant U.S. attorneys are allowed to hide behind a cloak of secrecy.

Based on the foregoing, the government's sealed motions must be unsealed or, in the alternative, DOES must be provided with a copy of all sealed *ex parte* motions so that they may adequately defend against any unknown arguments or allegations contained in that motion.

DOES are seeking to unseal and gain access to documents filed by the government in a civil action challenging the government's abuse of the grand jury process. DOES are not seeking material or information about the inner workings of the grand jury, nor are they seeking to discover the government's strategy behind the subpoenas. They simply want the opportunity to read and respond to the information which the government has secretly communicated to this Court in four sealed *ex parte* filings. Without access to these secret documents, DOES will end up like Chernekoff – "a blind man striking at an invisible foe" – unable to rebut even the weakest of arguments.

////

////

////

////

////

For these reasons, this Court should unseal all sealed documents filed by the government or at least allow DOES the opportunity to review all sealed and *ex parte* documents in order to combat any false, irrelevant or misleading information contained therein.

Respectfully submitted, this 31st day of July, 2009,

By: _____/s/_____

Margaret A. McLetchie
Nevada Bar No. 10931
**ACLU OF NEVADA**
732 S. Sixth Street, Suite 200A
Las Vegas, NV 89101
(702) 366-1902
*Attorneys for DOES 1-4*

## **Certificate of Service**

I hereby certify that on the 31st day of July, 2009, I caused to be served a true and correct copy of this MOTION TO UNSEAL ALL SEALED DOCUMENTS AND, IN THE ALTERNATIVE, FOR ACCESS TO SEALED EX PARTE DOCUMENTS by Plaintiffs DOES 1-4 to all of the parties listed below via electronic service using the Courts CM/ECF filing system to:

Peter S. Levitt, Esq.
333 Las Vegas Blvd. South
Suite 5000
Las Vegas, NV 89101
Peter.s.levitt@usdoj.gov


_____ _/s/_ _____

Tamika Shauntee

An Employee of the ACLU of Nevada