ALLEN LICHTENSTEIN, NV BAR 03992
MARGARET A. MCLETCHIE, NV BAR 10931
LEE B. ROWLAND, NV BAR 10209
JUDY C. COX, NV BAR 11093
AMERICAN CIVIL LIBERTIES UNION OF NEVADA
732 S. 6th St. Suite 200A
Las Vegas, NV 89101
Telephone 702-366-1536
Facsimile 702-366-1331

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| DOES 1 – 4,<br><br>Plaintiffs,<br><br>vs.<br><br>United States Attorneys, District of Nevada,<br><br>Defendants. | Case No. 2:09-cv-01083 KJD-PAL<br><br>**DOES' SUR-REPLY TO DEFENDANT'S REPLY IN SUPPORT OF AMENDED MOTION TO DISMISS** |

## **SUR-REPLY IN OPPOSITION TO MOTION TO DISMISS**

Come now DOES, by and through their attorneys of record, and, with permission of the Court, file this sur-reply to Defendant's Sealed Reply in Support of its Amended Motion to Dismiss. This motion is based on all previous filings to date and any argument this Court allows.

**I.  INTRODUCTION AND PROCEDURAL HISTORY**

DOES challenged two subpoenas issued to the Las Vegas Review-Journal by the U.S. Attorney's Office. DOES assert that the subpoenas constitute abuse of the grand jury process and violate the First Amendment because they improperly seek information about, and threaten

prosecution of, government critics.[1] The government has never bothered to respond to any of the important constitutional arguments raised by this action. Instead, the government filed a motion to dismiss and reply in support thereof arguing that because it now has what it wanted – information to launch an investigation – that DOES' challenge should be dismissed as moot. But DOES' constitutional challenge to the U.S. Attorney's actions in issuing two subpoenas seeking the identities of its anonymous commenters in not moot, and it should not be dismissed. The controversy is still very much alive, and this Court is still capable of providing effective relief, regardless of the fact that the Las Vegas Review-Journal has already complied with the second subpoena issued by the U.S. Attorney's Office. As just one example of the relief still available, this Court could issue a protective order prohibiting the use of the information obtained and requiring its destruction. *See, e.g., In re Grand Jury Subpoenas Dated December 7 and 8*, 40 F.3d 1096, 1100 (10th Cir. 1994); Doc. 18, Plaintiffs' Amended Motion for Protective Order.

Ignoring this and the nature of this action, the government's motion to dismiss sets forth stock, general cases about mootness. In contrast, in their opposition, DOES set forth extensive

---

[1] The comments pertained to a criminal trial in the *Kahre* tax case, *United States of America vs. Kahre et al.* (2:05-cr-121-DAE-RJJ). The government makes much ado of the comments made by District Court Judge David Ezra, the judge who presided over that trial, to suggest that the two comments still being investigated are true threats. (Reply at 3:15-23; 7:20-23.) However, this reliance is misplaced. *This* case is about whether the government abused the grand jury process by issuing *two* unconstitutional subpoenas for the purpose of chilling speech – specifically criticism – about the government and its attorneys, and about whether any of the comments truly constitute threats that fall outside the protection of the First Amendment. Judge Ezra's comments were made during the then-ongoing Kahre trial and he was concerned about the comments effects on the jurors' impartiality. Judge Ezra had the means to protect juror impartiality and the integrity of the jury process from the hyperbolic comments without having to rely on the government's subpoena power to intimidate commenters and chill speech. Furthermore, government's reliance on a few snippets of transcript where Judge Ezra refers to the comments as threats does not prove its case. More to the point, the question as to whether the comments fall outside the scope of the First Amendment should be addressed when this matter is heard on the merits. Whether the statements are true threat is a matter for the finder of fact, and irrelevant to the mootness question raised by the government.

DOES' Sur-Reply To Reply In Support of Motion to Dismiss

authority to the government's motion to dismiss *addressing the very situation at hand: whether a motion to quash a subpoena by a third party becomes moot when the recipient complies or when the subpoena is superseded by another one*. (Doc. 20, Opp. at 6:1 – 11:5.) The case law makes clear that the answer is no, and the government has never addressed this threshold argument or any of the cases detailed by DOES. In their opposition, DOES also argue that even if such motions to quash did become moot, the issue at hand falls within an exception to the mootness doctrine.

The government failed to file a reply addressing either of DOES' arguments as to why this matter is not moot within the statutory period for filing a reply, but this Court subsequently asked the government to file supplemental briefing replying to DOES' argument that this case falls within the capable of repetition yet evading review exception to the mootness doctrine. However, it remains that the government has never established how, why, or when the case became moot in the first place. Further, despite its late efforts to the contrary, the government fails to show why the evading review exception would not apply.

The facts at hand are exactly the type of situation the "capable of evading review" exception was designed to address. DOES, who are politically active and express themselves routinely in such fora as the Review-Journal website, will likely continue to comment anonymously. For example, they may comment on articles that address issues about the verdict in the *Kahre* trial or further proceedings such as sentencing, or even on prior articles still on the Review-Journal website.[2] And, despite the government's claims that future subpoenas are not

---

[2] The ability to post comments on articles appearing on the Review-Journal's website is available as long as the article remains on the website. Thus, a person could post a comment about an article weeks or months after the article was issued. The May 26, 2009 article which sparked the subpoenas is still open for comments, and the last comment was posted on August 28, 2009. *See* Joan Whitely, *Employer's gold, silver payroll standard may bring hard time*, Las Vegas Review-Journal, May 26, 2009, available at

3

DOES' Sur-Reply To Reply In Support of Motion to Dismiss

likely, a claim which rings hollow, the U.S. Attorney's Office is free to issue subsequent subpoenas at its whim,³ and the Review-Journal may comply. Indeed, there is no guarantee that the Review-Journal will even make public such subsequent subpoenas (which may have already been issued) and thus, they would unquestionably escape review. That the government has already succeeded in chilling the current and future speech of potential commenters, such as DOES and may obtain future obedience from the media cannot be the basis for a mootness argument.

The government also ignores the subpoenas' chilling impact on speech and argues that, because the targets of the second subpoena could litigate the issue if and when they are prosecuted, that there is alternative relief. However, this ignores the fact that, even without the subsequent investigation and prosecution, DOES and others have been, and continue to be, harmed by the first subpoena as well as the second subpoena because their free speech rights have been chilled. Far more is at stake than whether the current investigation into two of the commenters currently under investigation is proper: the question in this action is not whether eventual conviction is proper, but whether the investigation and *the subpoenas themselves* violated the law. Members of the public have privacy rights vis-à-vis their government beyond simply not being convicted,⁴ and cases have long held that one does not need to wait for

---

http://www.lvrj.com/news/46074037.html (last visited Aug. 30, 2009).

³ Voluntary cessation does not moot a case. *See, e.g., Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000).

⁴ The government notes that it will challenge the issue of standing if this case is not dismissed (Reply at p.8, fn. 2). Generally, to have standing in federal court, a party must show: (1) injury in fact (actual or threatened); (2) a causal relationship between the injury and the challenged conduct; and (3) a likelihood that the injury will be redressed by a favorable decision. Thus, a party challenging a governmental action as unconstitutional must show actual or threatened harm. *Oregon Advocacy Center v. Mink,* 322 F.3d 1101, 1108 (9th Cir. 2003). Further, when the threatened action implicates First Amendment rights, it is enough that the challenged act allegedly "chills" conduct protected by the First Amendment. *LSO, Ltd. v. Stroh*, 205 F.3d

conviction to raise First Amendment claims. *See e.g., MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-29 (2007)("where threatened action by the government is concerned, [courts] do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat-for example, the constitutionality of a law threatened to be enforced."); *ACLU of Nev. v. Heller*, 378 F.3d 979, 985 (9th Cir. 2004)(…"in the First Amendment context it is sufficient for standing purposes that the plaintiff intends to engage in a course of conduct arguably affected with a constitutional interest and that there is a credible threat that the challenged provision will be invoked against the plaintiff.").

Should this Court find this matter moot, it would preclude any effective means to *ever* challenge abusive subpoenas like those issued by the United States Attorney's Office. The fact that there is an opportunity to probe the power of federal prosecutors to issue secretive grand jury subpoenas that violate the First Amendment renders it exactly the kind of "extraordinary case" that the government urges it is not. (Reply at 8:3-7, citing *Wiggins v. Rushen*, 760 F.2d 1009, 1011 (9th Cir. 1985)). In any case, the government has not meets its burden of showing that this matter is moot[5] and the DOES should have their day in Court. Furthermore, because

---

1146, 1155 (9th Cir. 2000)("when the threatened enforcement effort implicates First Amendment rights, the inquiry tilts dramatically toward a finding of standing."). In the First Amendment context, it is sufficient for standing purposes that the plaintiff intends to engage in a course of conduct arguably affected with a constitutional interest and that there is a credible threat that the challenged provision will be invoked against the plaintiff. *ACLU of Nev. v. Heller*, 378 F.3d at 985. In this case, as detailed in DOES' Amended Motions (Doc. 9 at 7:17 – 8:20), each DOE was harmed by the subpoenas because they sought their identities and because they have chilled, and will continue to chill, their speech. As detailed in DOES' Amended Motions (Doc. 9 at 6:19 – 7:14), many courts have recognized third party standing to challenge subpoenas.

[5] For a complaint to survive a motion to dismiss where a defendant requests dismissal for failure to state a claim, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief. *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). DOES have set forth concrete, undisputed facts along with copious on-point citations to numerous Ninth Circuit and U.S.

the government has failed to file any opposition to DOES' Motions to Quash, Intervene, and for a Protective Order (Docs. 9, 17, 18), the motions should be granted. *See* Local District Court Rule 7-2(d) (the failure of an opposing party to file points and authorities in response to any motion shall constitute consent to the granting of the motion).

## II. ARGUMENT

"The party asserting mootness has the heavy burden of establishing that there is no effective relief remaining for a court to provide." *Oregon Advocacy Center v. Mink*, 322 F.3d 1101, 1116 (9th Cir. 2003) (citing to *Tinoqui-Chalola Council of Kitanemuk & Yowlumne Tejon Indians v. United States Dep't of Energy*, 232 F.3d 1300, 1303 (9th Cir.2000). DOES' constitutional challenge is not moot and the government has not met its burden of showing mootness, neither in its original motion nor in its reply.

The Review-Journal's compliance with the subpoena did not moot DOES' challenge because this Court can still provide effective relief. And even if this Court finds that compliance somehow mooted the challenge, the harm that DOES face is of a short duration evading court review, and is capable of repetition by the government because, without court intervention, there is nothing preventing the government from doing it again.

### A. **THIS MATTER IS NOT MOOT.**

The Review-Journal's compliance with the second subpoena does not moot DOES' constitutional challenge to the government's abuse of the grand jury process because a matter is moot only if the circumstances existing when the action was filed have forestalled any meaningful relief. "(T)he question is not whether the precise relief sought at the time the

---

Supreme Court cases which are more than plausibly suggestive of a claim entitling them to relief. Regardless, the government is not seeking dismissal for failure to state a claim, and is instead asserting that the case is moot, a contention which they have the burden of proofing. *Oregon Advocacy Center v. Mink*, 322 F.3d at 1116; *see also* Doc. 15 at 4:18-20.

DOES' Sur-Reply To Reply In Support of Motion to Dismiss

application [ ] was filed is still available. The question is whether there can be *any* effective relief." *West v. Secretary of Dept. of Transp.,* 206 F.3d 920, 925 (9th Cir. 2000) (emphasis in original; internal citations and quotes omitted). As long as a court can grant any effective relief, it does not matter that the relief originally sought is unavailable due to changed circumstances. *Church of Scientology of Calif. v. United States*, 506 US 9, 12–13 (1992); *see also Haven realty Corp v. Coleman*, 455 U.S. 363, 370-371 (1982) (even if a plaintiff's primary injury is resolved, the case is not moot as long as plaintiff continues to suffer some harm that a favorable court decision would remedy; case not moot when plaintiff sought both injunctive relief and damages, even though equitable relief was no longer available).

The fact that the government voluntarily withdrew the first subpoena does not render DOES' challenge to it moot. As the Supreme Court has explained:

> It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice. If it did, the courts would be compelled to leave the defendant ... free to return to his old ways. In accordance with this principle, the standard we have announced for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: …. The heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness.

*Friends of the Earth, Inc.,* 528 U.S. at 189. Voluntary cessation of the challenged conduct moots a case only if it is "*absolutely* clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Adarand Constructors, Inc. v. Slater,* 528 U.S. 216, 221 (2000) (emphasis in original; internal quotes omitted).[6]

---

[6] For similar reasons, the government's claims that it is unlikely to issue future similar subpoenas rings hollow because the government has already issued not one, but two subpoenas. There is nothing stopping them for issuing a third or from issuing similar subpoenas in the future when DOES make other politically charged comments about governmental officials.

7

Nor does the Review-Journal's compliance with the second subpoena moot the action: this Court can still grant DOES appropriate and effective relief, as detailed in DOES' Opposition. (Doc. 20, Opp. at 6:24 – 8:12.) Rule 57 of the Federal Rules of Criminal Procedure gives district court judges and magistrates wide latitude to fashion appropriate relief. Fed. R. Crim. P. 57(b) ("Procedure When There Is No Controlling Law") ("A judge may regulate practice in any manner consistent with federal law, these rules, and the local rules of the district…."); *see also Church of Scientology of California*, 506 U.S. at 13 (appeal of summons issued by IRS not moot even though tapes sought by summons had been produced because court could render partial relief by ordering the return or destruction of the tapes); *In re Grand Jury Subpoenas Duces Tecum*, 78 F.3d 1307, 1310-11 (8th Cir. 1996) (court can provide effective partial relief by ordering return or destruction of documents produced during compliance with an improper subpoena, which prevents the issue from becoming moot); *In re Grand Jury Subpoenas Dated December 7 and 8*, 40 F.3d 1096, 1100 (10th Cir. 1994) (ordering return or destruction of records after compliance with a subpoena could provide at least a modicum of relief, and thus the issue is not moot).

Here, a wide variety of appropriate relief is available to DOES. (Doc. 20 at 6:24-8:12.) First, this Court could order the destruction of any information already provided to the government, which would protect the DOES from further use of said information to violate their First Amendment rights to anonymous free speech. A protective order barring future use for *any* purpose, not just a criminal investigation, of the information obtained – directly or indirectly – through the subpoena would also provide more than a modicum of relief to the DOES. Finally, by declaring the subpoenas unconstitutional, thereby sending a clear massage to the government that abuses will not be tolerated, and by preventing prosecution of the

DOES, this Court would provide a very strong measure of relief. The existence of such avenues of relief means that this action is far from moot. It must be noted that DOES raised these issues and cited these cases in their Opposition to the government's Motion to Dismiss (Doc. 20, Opp. at 6:24–8:12), yet the government has never addressed them nor explained why the above cited cases and proposed solutions are not applicable in this current situation.[7] The only time the government's reply even comes close addressing relief is when it argues that DOES could simply wait until they "find themselves charged by way of federal indictment," (Reply at 7:3–5) and then argue that their comments constitute protected speech rather than unlawful threats.

Based on the government's own admission, the controversy rages on. The government admits that there is an ongoing criminal investigation based on the information from the Review-Journal's compliance with the subpoena (Reply at 5:14-17) yet argues that DOES' constitutional challenge is moot because there is no live controversy. (Reply at 4:15-23.) More importantly, this case is not about the constitutionality of the grand jury proceeding alone. First, the challenge is to both subpoenas. Second, DOES assert that the comments, including the two remaining comments, are protected political speech, not criminal threats, and that the subpoenas had, and continue to have, a chilling effect on constitutionally protected speech. (See Doc. 9 at 8:23 – 22:2.) The investigation that resulted from the subpoenas is not the only aspect of the subpoenas that has had a chilling effect, although it does cement fear that the

---

[7] The government's Reply also tries to employ the scare-tactic of claiming that DOES are trying to prevent "any grand jury investigation into anyone who posts a colorable threat on a public website." (Reply at 7:11-13.) DOES are attempting no such thing. DOES are instead only pointing out what the government should already know: it is constrained by the First Amendment and it should not abuse the wide latitude it has in a way that chills political speech – or influence jurors.

9

DOES' Sur-Reply To Reply In Support of Motion to Dismiss

government can attempt to prosecute people for protected speech in the hearts and minds of the public.

While it is true that the Review-Journal already complied with the second subpoena, this does not mean that the challenge is moot: this Court can still issue declaratory relief that both subpoenas were unconstitutional and issue a protective order stating that the information provided by the Review-Journal must be destroyed *and must not used for any purpose including criminal investigation or prosecution* of *for any other purpose, such as tracking and monitoring its critics*.

There is a heavy burden on the party asserting mootness to prove that there is no remaining effective relief. *Oregon Advocacy Center v. Mink*, 322 F.3d at 1116-1117. The government's mootness argument neglects to account for alternate avenues of relief that can be granted to the DOES by this Court, and their focus on one of the mootness exceptions, rather than on the threshold issue of mootness itself, means that the government has failed to meet the steep burden of proof required to establish mootness. The DOES have the required personal stake in the matter, and it is not moot.[8]

### B. EVEN IF THIS ISSUE APPEARS TO BE MOOT, IT IS NOT MOOT AND IS STILL JUSTICIABLE BECAUSE IT IS CAPABLE OF REPETITION YET EVADING REVIEW.

If an issue is "capable of repetition, yet evading review," the litigation may continue notwithstanding the named plaintiff's current lack of a "personal stake." *United States Parole Commission v. Geraghty,* 445 U.S. 388, 398 (1980). Beyond the facts that the DOES have a personal stake and that the controversy is live,, the controversy is unquestionably capable of

---

[8] *See, e.g., ACLU of Nev. v. Heller*, 378 F.3d at 985 (…"in the First Amendment context it is sufficient for standing purposes that the plaintiff intends to engage in a course of conduct arguably affected with a constitutional interest and that there is a credible threat that the challenged provision will be invoked against the plaintiff.")

10

DOES' Sur-Reply To Reply In Support of Motion to Dismiss

repetition yet evading review. The "capable of repetition yet evading review" exception to the mootness doctrine is limited to cases where: (1) the challenged action is of limited duration, too short to be fully litigated prior to its cessation or expiration; and (2) there is a reasonable expectation that the complaining party will be subjected to the same action again. *Murphy v. Hunt*, 455 U.S. 478, 482 (1982).

The government's arguments that DOES cannot meet either requirement are based on faulty reasoning and unfounded assumptions. First, the government argues that compliance with the second subpoena mooted DOES' challenge, but that the seven-day compliance deadline was not of a limited duration that is too short to be fully litigated. (Reply at 4:15–16; 6:18–8:7.) This is nonsensical: seven days is of course too short to litigate a third-party challenge before compliance. Second, the government suggests that the matter is moot because it will never again repeat the action of issuing a subpoena seeking DOES' identities. (Reply at 5:16–18.) This ignores the fact that the government has control over whether or not to issue more subpoenas to the Review-Journal, or other media outlets, and as noted above, voluntary cessation of a complained-of practice cannot moot an action. The hollowness of the government's claims is evident: it has already issued a second subpoena, and could potentially issue a third or fourth subpoena if it decides to broaden the investigation.

### 1. **The challenged action is of an inherently short duration that is too brief for effective judicial review.**

The first prong of the mootness exception is that the challenged action must be of an inherently short duration, a period too brief for effective judicial review. This prong is analyzed on a case-by-case basis. *See, e.g., Roe v. Wade*, 410 U.S. 113, 125 (1973) (claim held capable of repetition but evading review where mother challenging abortion statute gave birth

11

DOES' Sur-Reply To Reply In Support of Motion to Dismiss

to child before case reached Supreme Court); *Moore v. Ogilvie*, 394 U.S. 814, 815-16 (1969) (claim held capable of repetition, yet evading review where state election occurred during pendency of litigation concerning ballot process); *Carroll v. President & Commrs of Princess Anne*, 393 U.S. 175, 178 (1968)(challenge to ten-day restraining order on protest demonstration held capable of repetition yet evading review because litigation could never be completed before ten-day expiration period). Just like pregnancy, an election cycle, and other circumstances found by courts to meet this prong, the time between when a subpoena is issued and when the recipient must respond is an inherently short duration, too brief for effective judicial review. Indeed, this is especially the type of case where parties are unlikely to learn of the subpoenas at all: there is potentially no period during which they can seek judicial review.

Ignoring this, the government argues that DOES' constitutional challenge became moot as soon as the Review-Journal complied with the second subpoena (Reply at 4:15-16) and then goes on to argue that DOES cannot meet the mootness exception because the challenged action – an unconstitutional subpoena that, if complied with, could lead to criminal prosecution – could always be challenged during the subsequent criminal prosecution. (Reply at 7:1-5.) This argument misses the point. DOES are challenging the subpoenas now, while they still have a chance at preventing the government from launching an unconstitutional investigation and are attempting to obtain declaratory relief to avoid future constitutional abuses and the inherent chill on speech at issue here.

The challenged action in this case is the government's abuse of the grand jury process and the issuance of an unconstitutional subpoena. DOES' purpose was to challenge the subpoena itself because the comments are clearly protected political speech and because DOES want to avoid having their identities known by the government and prevent the government

from engaging in a malicious investigation and prosecution. (See Decl. of DOE 4 at ¶¶ 7-11.) (Doc. 9 at 22:4-16.)

The timeline for challenging a grand jury subpoena is usually very short and in this case, it was only seven days. The Review-Journal was given a mere seven days to comply with the second subpoena.[9] This is much shorter than either the 277-day pregnancy timeline in *Roe* or the state election season in *Moore*. As other courts have noted, it is impossible to file a civil challenge and have it adjudicated in a week. *See e.g., In re Grand Jury Proceedings, Thursday Special Grand Jury Sept. Term, 1991*, 33 F.3d 342, 346-347 (4th Cir. 1994)("…the life of a subpoena, measured by the duration of a grand jury session, is too short to be fully litigated prior to its expiration.").

The government tries to argue that DOES' challenge is moot and then argues that DOES cannot meet the mootness exception because they cannot prove that the complained of action is of "inherently short duration, a period too brief for effective judicial review." (Reply at 5:7-15.) If, as the government tries to allude, the issue is only "live" prior to compliance with the subpoena, then the seven-day period for compliance is surely an "inherently short duration" and meets the first factor of the mootness exception. Subpoenas must usually be complied with very quickly and if the government is relying on compliance as the trigger for mootness it cannot also argue that the challenged action is not of "inherently short duration." The government cannot have it both ways. The issue is either still "live" or, if compliance with the subpoena triggered mootness, then the first prong of the mootness exception is clearly met.

////

////

---

[9] The second subpoena was issued on June 16, 2009 and the Review-Journal was ordered to comply by June 23, 2009. The Review-Journal actually complied on June 18, 2009 – a mere 2 days.

13

DOES' Sur-Reply To Reply In Support of Motion to Dismiss

## 2. **The Challenged Action is Capable of Repetition.**

The second prong of the mootness exception is whether there is a reasonable expectation that the complaining party will be subjected to the same action again. Here, the government tries to narrow the scope of DOES' by arguing that "there is virtually *no* possibility…that the two commenters will be targeted a second time for their comments about 'hanging' the 'dummies' or the prosecutor's 'next birthday.'" (Reply at 5:17-19.)[10] It is easy for the government to argue that the two commenters will never again be targets of a grand jury subpoena for actions that are already being investigated, but it is harder for the government to assert that it will never again investigate DOES 1-4 because of perceived threats to the government. There is no basis for this argument and the government's reply ignores both the fact that the government's voluntary cessation cannot moot a challenge, as detailed above at 7:20 – 8:7,[11] and that the harm to DOES' First Amendment rights is ongoing.

A harm is necessarily capable of repetition if it is ongoing. In *Carroll v. President & Commrs of Princess Anne*, 393 U.S. 175, the Court found that a First Amendment constitutional challenge to ten-day restraining order on protest demonstration was capable of repetition yet evading review because litigation could never be completed before ten-day expiration period. *Id.* at 178. In *Carroll*, the court found that the harm – restrictions of First Amendment speech rights – was capable of repetition in part because the harm was still

---

[10] The case cited by the government for this supposition, *Doe v. U.S.*, 863 F.2d 667, 669 (9th Cir. 1988), actually found that the plaintiff did have a reasonable expectation that she would be recalled before a grand jury and would again be held in contempt for refusing to testify before a grand jury. The court actually found that she met the second prong of the test, but recent legislation precluded finding that the contested action was likely to evade review. *Id.* at 669. The government is correct that the words "reasonable expectation" and "bare possibility" are mentioned in the opinion.

[11] It is also rather convenient for the government to assert that "there is virtually no possibility that the two R-J commenters will again be investigated for their comments" (Reply at 6:12-13), when it is the government that has control over any future investigations.

14

DOES' Sur-Reply To Reply In Support of Motion to Dismiss

ongoing. *Id*. at 178. The unconstitutional ruling by a state court imposing a ten-day restraining order prohibiting petitioners from holding any rallies had a reverberating effect which caused petitioners to be denied the right to demonstrate at other locations and on other occasions. *Id*. at 179 ("The underlying question persists and is agitated by the continuing activities and program of petitioners: whether, by what processes, and to what extent the authorities of the local governments may restrict petitioners in their rallies and public meetings.").

Here, proof that the harm is capable of repetition is readily available because it has already been repeated. The government issued its first subpoena seeking identifying information of all commenters: the two currently targeted commenters being among that group. Then, the government issued a superseding subpoena seeking information on the two remaining commenters, but nobody else. There is nothing currently preventing the government from issuing another subpoena seeking information on a few more of the other commenters, some of whom might be DOES 1-4. DOES 1-4 were harmed by the first subpoena as well as the second subpoena because both subpoenas send a clear message that criticism of the government will not be tolerated. The harm is ongoing because there has been no action – by this Court, or the government – to correct this message. The harm will continue, in the form of the chilled speech by DOES, and possibly in the form of tighter censorship by the media, on future comments that are critical of governmental action.

Secondly, citing no case law, the government conclusorily argues that the "same party, same action" prong must encompass the *exact* same harm: "there is virtually *no* possibility…that the two commenters will be targeted a second time for their comments about 'hanging' the 'dummies' or the prosecutor's 'next birthday.'" (Reply at 5:16-19.) Here, as detailed above, it *is* the same parties and same harm, but arguing that the two commenters must

15

DOES' Sur-Reply To Reply In Support of Motion to Dismiss

be investigated again for the exact same comments is bordering on absurdity. In *Moore v. Ogilvie*,[12] the harm that was capable of repetition – an unconstitutional nominating procedure – would, at the least, involve a different election and could even involve other potential candidates as challengers to the law. Similarly, in *Carroll v. President & Commrs of Princess Anne*[13] the harm that was capable of repetition – denial of a group's constitutional right to hold protests – could involve other members of the same group at different locations, with different messages. Even in *Roe v. Wade*[14], the paradigm mootness-exception case, the harm that was capable of repetition – denial of access to an abortion – would not possibly involve the exact same harm.

The government never adequately addresses the argument that the harm that is capable of repetition - the chilling of DOES' First Amendment speech rights by government action – could happen again *in a similar manner as before*. DOES are very interested in political issues and often have opinions that are critical of the government. (*See e.g.*, Declaration of DOE 4 at ¶ 10.) DOES often express their views publicly and engaging in public discourse by posting their opinions on public forums. (Decl. of DOE 4 at ¶¶ 4, 5, 10.) They are not going to stop voicing their opinions and will continue to use strong, often shocking, language to do so,

---

[12] 394 U.S. 814, 816 (1969). The court found that the burden placed on the nomination of candidates for statewide offices remained and would control future elections. Therefore, the problem was capable of repetition, yet evading review. The Court never stated that the challenging parties must prove a reasonable expectation of running for office again.

[13] 393 U.S. 175, 178 (1968).

[14] 410 U.S. 113 (1973)(finding that human gestation period does not last long enough to accommodate appellate procedure, and thus the issue of whether a state's abortion ban is constitutional as applied to an expectant mother does not become moot once her pregnancy is carried to term because "[p]regnancy often comes more than once to the same woman, and in the general population, if man is to survive, it will always be with us." The Court never stated that ROE herself must demonstrate a reasonable expectation of future pregnancy.

although the government subpoena has had a chilling effect on their political speech. (Decl. of DOE 4 at ¶¶ 8-10.) Thus, unlike the party in *In re North*, cited by the government, DOES have never given any indication that they will cease the activity that brought about the challenge. *See In re North*, 383 F.3d 871, 877 (9th Cir. 2004)(the court found the challenged harm – suspension from the bar - was not capable of repetition in part because the challenger declared that he would not apply for membership to the bar). Furthermore, if the government's challenged subpoena to the Review-Journal is any indication of their readiness to investigate any and all perceived threats, regardless of the First Amendment protections, then there is a reasonable chance that DOES 1-4 will again find themselves on the receiving end of a federal criminal investigation for posting their political views on a subject that is of current importance to the government. Regardless of future events, DOES have been and continue to be chilled by both subpoenas. This Court has the ability to remedy that harm and this action is not moot.

And, the challenged harm is capable of repetition because the harm is ongoing, and the government remains free, despite its promise to the contrary, to issue a third or fourth subpoena to the Review-Journal, or to issue future chilling subpoenas to any other media outlet where DOES and other members of the public post comments in the future.

////

////

////

////

////

////

////

DOES' Sur-Reply To Reply In Support of Motion to Dismiss

## III. CONCLUSION

Based on the fact that the government never establishes why this case is moot, and only argued against one of the many mootness exceptions,[15] it has not meet the burden of proof in establishing mootness and that the harm is not capable of repetition yet evading review. For all these reasons, DOES respectfully request that the government's Amended Motion to Dismiss be denied and further request that their Amended Motions to Quash, Intervene, and for a Protective Order (Docs. 9, 17, 18) be granted because the government has filed to oppose those motions.

Respectfully submitted, this 31st day of August, 2009,

By: _____/s/_____
Margaret A. McLetchie
Nevada Bar No. 10931
**ACLU OF NEVADA**
732 S. Sixth Street, Suite 200A
Las Vegas, NV 89101
(702) 366-1902
*Attorneys for DOES 1-4*

---

[15] Even if the "capable of repetition" mootness exception did not apply, other mootness exceptions would apply. As noted above at 7:20 – 8:7, voluntary cessation does not moot an action. Further, under the "collateral consequences" doctrine, a case should not be dismissed as moot even where plaintiff's primary injury has passed if the federal court's decision is likely to have some effect in the future. *See e.g., Super Tire Engineering Co. v. McCorkle*, 416 U.S. 115 (1974)(employers hit by labor strike challenged a state law permitting the strikers to receive welfare benefits, and court held that the challenge was not moot even though the strike ended before the litigation, because a ruling would influence future union negotiations.) Furthermore, a case is moot when the defendant voluntarily ceases the challenged behavior, but is free to resume it once the case is dismissed. The government incorrectly leaps to the conclusion that the present case is moot.

**Certificate of Service**

I hereby certify that on the 31st day of August, 2009, I caused to be served a true and correct copy of this SUR-REPLY TO DEFENDANT'S REPLY IN SUPPORT OF AMENDED MOTION TO DISMISS to all of the parties listed below via electronic service using the Courts CM/ECF filing system to:

Peter S. Levitt, Esq.
333 Las Vegas Blvd. South
Suite 5000
Las Vegas, NV 89101
Peter.s.levitt@usdoj.gov

                                               /s/
                                       Tamika Shauntee
                                       An Employee of the ACLU of Nevada